UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THORNTON & COMPANY, INC. | : | CIVIL CASE NO. |
|     Plaintiff, | : | 3:11-cv-375 (JCH) |
| | : | |
| v. | : | |
| | : | |
| LINDAMAR INDUSTRIES, INC. | : | DECEMBER 9, 2011 |
|     Defendant. | : | |

**RULING RE: DEFENDANT'S MOTION TO DISMISS (DOC. NO. 19)
& PLAINTIFF'S MOTION TO TRANSFER (DOC. NO. 34)**

**I. INTRODUCTION**

Plaintiff Thornton & Company, Inc. ("Thornton") filed this action against the defendant, Lindamar Industries, Inc. ("Lindamar"), on March 7, 2011, alleging that Lindamar owes it $130,515.40 for "goods sold and delivered [by Thornton to Lindamar] from June 28, 2010, through August 24, 2010." Compl. (Doc. No. 1) ¶ 4. Lindamar has moved to dismiss this action pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction. Mot. to Dismiss (Doc. No. 19). Thornton objects to the Motion, arguing, first, that Lindamar is subject to suit in Connecticut, and, second, that the court should transfer rather than dismiss the case if it finds jurisdiction lacking. Pl.'s Mem. in Opp. (Doc. No. 33) at 1; Mot. to Transfer (Doc. No. 34). For the following reasons, the court grants the plaintiff's Motion to Transfer and denies the defendant's Motion to Dismiss as moot.

**II. FACTUAL BACKGROUND[1]**

The plaintiff, Thornton, is a Connecticut corporation with its principal place of

---

[1] For purposes of this Motion to Dismiss, the court takes the facts alleged in the plaintiff's complaint, affidavit, and exhibits as true and draws all inferences in plaintiff's favor. See Distefano v. Carozzi North America, Inc., 286 F.3d 81, 84 (2d Cir. 2001).

1

business in Southington, Connecticut.  Compl. ¶ 1.  The defendant, Lindamar, is a California corporation with its principal place of business in Paso Robles, California.  Compl. ¶ 2.

Thornton sells bulk plastic resin ("plastic") it obtains from third-party suppliers to manufacturers, who melt the plastic down for use in products such as plastic bags and food containers. Wittneben Aff. (Doc. No. 33-1) ¶ 2.  Beginning in April 2010, Lindamar ordered plastic from Thornton on ten occasions.  Id. ¶¶ 4, 8.  These orders were placed with Douglas Dunn, Thornton's sales representative in California.  Id. ¶ 4.

The sales to Lindamar were made on credit.  Id. ¶ 5.  Following each sale, Thornton would send an invoice to Lindamar.  Id. ¶ 10(f).  On the back of each invoice was a list of Conditions of Sale, including a clause stating that the "contract shall be governed by the laws of the State of Connecticut."  Invoice (Doc. No. 33-5) ¶ 8.

For five of the orders, Lindamar sent payment to the Thornton offices in Connecticut.   Wittneben Aff. ¶ 5.  Another order was returned and resold to another party.  Id. ¶ 7.  On four occasions, however, Lindamar refused to pay, arguing that Thornton had provided defective plastic.  Id. ¶ 9.  Further, the plastic could not be returned and resold, because it had already been processed into other products and sold to third parties.  Id.  Thornton subsequently filed suit, claiming that Lindamar owed it $130,515.40 for the unpaid orders.  Compl. ¶ 4.

### III. LEGAL STANDARD

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant."  Met Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  "Where a court

relies on pleadings and affidavits, rather than conducting a 'full-blown evidentiary hearing,' the plaintiff need only make a prima facie showing that the court possesses personal jurisdiction over the defendant." DiStefano, 286 F.3d at 84. "A plaintiff can make this showing through his own affidavits and supporting materials containing an averment of facts that, if credited . . . , would suffice to establish jurisdiction over the defendants." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2008) (internal citations and quotation marks omitted). All allegations are construed "in the light most favorable to plaintiff and doubts are resolved in the plaintiff's favor." Id.

## IV.   DISCUSSION

"[T]he amenability of a foreign corporation to suit in federal court in a diversity action is determined in accordance with the law of the state where the court sits." Arrowsmith v. United Press Int'l, 320 F.2d 219, 223 (2d Cir. 1963) (en banc). "Connecticut uses a familiar two-step analysis to determine if a court has personal jurisdiction. First, the court must determine if the state's long-arm statute reaches the foreign corporation. Second, if the statute does reach the corporation, then the court must decide whether that exercise of jurisdiction offends due process." Bensmiller v. E.I. Dupont de Nemours & Co., 47 F.3d 79, 81 (2d Cir. 1995).

Thornton argues that jurisdiction is conferred by section 33-929(f) of the Connecticut General Statutes, which provides, in relevant part, that "every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state . . . on any cause of action arising . . . out of any contract made in this state or to be performed in this state." Conn. Gen. Stat. § 33-929(f)(1). Thus, jurisdiction is only proper in this case if the court finds that the sales

contracts at issue were made in Connecticut or were to be performed in Connecticut.

    A.    <u>Were the contracts made in Connecticut?</u>

Under Connecticut law, a contract "is considered made when and where the last thing is done which is necessary to create an effective agreement." <u>H. Lewis Packaging, LLC v. Spectrum Plastics, Inc.</u>, 296 F. Supp. 2d 234, 239 (D. Conn. 2003). Here, Lindamar made its offers to buy plastic to Douglas Dunn, Thornton's sales representative in California. Thornton argues that those orders were accepted by its Vice President, Nathaniel DeAngelis, at the company's office in Southington, Connnecticut. Pl.'s Mem. in Opp. at 4. The court disagrees. DeAngelis simply communicated approval of the orders to sales representative Dunn. See <u>id.</u> This is the corporate equivalent of an offeree talking to himself. It was Dunn in California who actually communicated acceptance to the offeror, Lindamar. See <u>id.</u> 4 (stating that DeAngelis "communicated Plaintiff's acceptance of the [offers] back through Mr. Dunn to Lindamar"). Accordingly, the court finds that the last step necessary to create an effective agreement occurred in California, not Connecticut.

    B.    <u>Were the contracts performed in Connecticut?</u>

Thonton contends that it "substantially performed every aspect of its contractual obligations with Defendant here in Connecticut." Pl.'s Mem. in Opp. at 4. It points out that its Connecticut employees made calls to outside suppliers in order to locate plastic appropriate for Lindamar; ran periodic credit checks on Lindamar; conducted online research on Lindamar; wired funds to suppliers; made arrangements to ship plastic to Lindamar; mailed invoices to Lindamar; and communicated by phone, email, and fax with Lindamar regarding the quality of the plastic.

In cases where a plaintiff seeks to rely on its own performance to satisfy section 33-929(f)(1), "courts have found jurisdiction only where (1) the contract expressly contemplated or required performance in Connecticut, or (2) the plaintiff has actually performed its obligations in Connecticut and such performance was the most substantial part of the obligations to be performed under the contract." General Star Indemnity Co. v. Anheuser-Busch Co., No. 3:97-CV-2542, 1998 WL 774234, at *4 (D. Conn. Aug. 24, 1998) (citing cases).

In this case, the court does not find that the sales agreements between the parties expressly contemplated or required performance in Connecticut. Lindamar placed orders with a California sales agent for the delivery of plastic in California. Where Thornton performed the administrative work necessary to secure those deliveries was largely irrelevant to Lindamar. These were, at core, contracts for the sale of goods, not contracts for the provision of Connecticut-based credit or administrative services. Contra Advanced Claims Service v. Franco Enterprises, No. CV00037458S, 2000 WL 1683416, at *4 (Conn. Super. Oct. 14, 2000) (jurisdiction found proper where parties contracted for plaintiff to perform investigative services in Connecticut); Bowman v. Grolsche Bierbrouwerji B.V., 474 F. Supp. 725, 731-32 (D. Conn. 1979) (jurisdiction found proper where written agreement contemplated that the plaintiff would sell the defendant's beer in Connecticut).[2]

For similar reasons, the court does not find that the activities performed by

---

[2] For purposes of analysis under section 33-929(f)(1), the court does not find it necessary to resolve the parties' dispute as to whether the choice of law clause listed on the back of Thornton's invoices can properly be considered part of the parties' sales agreements. See Pl.'s Mem. in Opp. at 7 (arguing that the course of performance established Lindamar's acceptance of the invoice terms and conditions). Even if the choice of law clause was integrated into the agreements, a choice of Connecticut law does not amount to an express requirement or contemplation of Connecticut performance. See ebm-papst, Inc., et al., v. AEIOMed, Inc., 2009 U.S. Dist. LEXIS 8790, at *5 (D. Conn. Feb. 5, 2009).

Thornton in Connecticut were "the most substantial part of the obligations to be performed under the contract." General Star Indemnity Co., 1998 WL 774234, at *4. Again, all of the administrative activities described by Thornton were ancillary to its primary obligation under the contracts: delivering plastic to Lindamar in California.[3]

Finally, the court finds that Lindamar's sending of payments, emails, and faxes from California to Connecticut, see Pl.'s Mem. in Opp. at 5, 7, is insufficient to confer jurisdiction under section 33-929(f)(1). While the sending and receiving of payments and other items has been found to constitute performance under section 33-929(f)(1) in some cases, see, e.g., Teleco Oilfield Servs., Inc. v. Skandia Ins. Co., 656 F. Supp. 753, 757 (D. Conn. 1987), the Connecticut Supreme Court has made clear that such acts "come within [the statute only] if the defendant ha[s] other significant contacts with this state." Lombard Brothers, Inc. v. General Asset Management Co., 190 Conn. 245, 257 (1983) (finding that the transfer of funds from Connecticut and the sending of confirmation slips to Connecticut did not confer statutory jurisdiction where contracts were "substantially made and executed in New York" and defendant had "sparsity of contacts" with Connecticut).[4]

Here, Lindamar did not place its sales orders with Thornton's Connecticut employees, did not send its employees to visit Thornton's Connecticut offices, has no

---

[3] The court notes that Thornton does not claim in its Memorandum or Affidavit that the plastic at issue was shipped from a location in Connecticut. Instead, it claims that a Connecticut-based employee arranged the shipping. Wittneben Aff. ¶ 4 ("Ms Cowdell then made arrangements for the shipment of plastic to Defendant by rail or truck."). Thus, even if the court characterized Thornton's primary obligation as shipment of plastic rather than delivery of plastic, it would not find that the most substantial part of Thornton's obligations were performed in Connecticut.

[4] The Lombard decision actually addressed Conn. Gen. Stat. § 33-411(c), a statutory precursor to section 33-929(f)(1) with identical language. Compare Lombard Bros, 190 Conn. at 253 (quoting language of section 33-411(c)), with Conn. Gen. Stat. § 33-929(f)(1).

employees of its own in Connecticut, has no property or bank accounts in Connecticut; and does not advertise or sell its products in Connecticut. Hall Aff. (Doc. No. 20-2) ¶¶ 3-10. As a result, the court finds that Lindamar has not had the sort of "significant contacts" with Connecticut that the Lombard court deemed necessary to justify jurisdiction under section 33-929(f)(1). See ebm-papst, Inc., et al., v. AEIOMed, Inc., 2009 U.S. Dist. LEXIS 8790, at *5 (D. Conn. Feb. 5, 2009) ("Partial payments made to Connecticut, without more, are . . . insufficient to constitute performance of the contract pursuant to 33-929(f)(1).").

In summary, Thornton has failed to make a prima facie showing that the court has personal jurisdiction over Lindamar.[5] Pursuant to 28 U.S.C. § 1406(a), however, a court may cure a lack of personal jurisdiction "by transfer to a district in which personal jurisdiction [can] be exercised." SongByrd, Inc. v. Estate of Grossman, 206 F.3d 172, 179 n.9 (2d Cir. 2000). Thornton has requested that, rather than dismiss the case, the court transfer it to the Central District of California where the defendant resides. Pl.'s Mem. in Opp. at 12. Lindamar agrees that the Central District of California is a proper venue for the case. Def.'s Mem. in Supp. (Doc. No. 20) at 9. Accordingly, the court concludes that it is in the interest of justice to transfer the case rather than dismiss it.

## V. CONCLUSION

For the forgoing reasons, the plaintiff's Motion to Transfer (Doc. No. 34) is granted and the defendant's Motion to Dismiss (Doc. No. 19) is denied as moot. The

---

[5] Because the court concludes that the requirements of section 33-929(f) are not satisfied, it need not address whether the exercise of jurisdiction would offend due process. The court notes, however, that it has serious doubts as to whether Lindamar could be found to have "purposefully avail[ed] itself of the privilege of conducting activities within [Connecticut], thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (U.S. 1958).

7

Clerk is directed to transfer this case to the United States District Court for the Central District of California.

**SO ORDERED**

  Dated at Bridgeport, Connecticut, this 9th day of December, 2011.

                 /s/ Janet C. Hall
                Janet C. Hall
                United States District Judge